IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DEBORAH SPRINGER SUTTLAR,** *et al.*                                                                 **PLAINTIFFS**

**v.**                                         **Case No. 4:22-cv-00368 KGB**

**JOHN THURSTON,** *et al.*                                                                              **DEFENDANTS**

<u>ORDER</u>

Before the Court is a motion for remand filed by plaintiffs Deborah Springer Suttlar; Judy Green; Fred Love, in his individual and official capacity as State Representative; Kwami Abdul-Bey; Clarice Abdul-Bey; and Paula Withers (Dkt. No. 9). Defendants John Thurston ("Secretary Thurston"), who is sued in his official capacity as Arkansas Secretary of State and in his official capacity as the Chairman of the Arkansas State Board of Election Commissioners, and Sharon Brooks, Bilenda Harris-Ritter, William Luther, Charles Roberts, Wendy Brandon, Jamie Clemmer, and James Harmon Smith III, who are sued in their official capacity as members of the Arkansas State Board of Election Commissioners, responded in opposition (Dkt. No. 19). Plaintiffs filed a reply to defendants' response (Dkt. No. 22). For the following reasons, the Court grants plaintiffs' request to remand this case to the Circuit Court of Pulaski County immediately on the basis that this Court lacks subject matter jurisdiction (Dkt. No. 9).[1]

---

[1] This Court is aware that "[a] district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). However, the parties did not request or brief the issue of whether this Court is required to convene such a panel to decide the question of subject matter jurisdiction in a motion for remand. This Court concludes that no such panel is needed because, as one court observed, "[t]he question of constitutionality under the state constitution does not fall within [a federal] court's limited jurisdiction under 28 U.S.C. § 2284(a) to hear actions 'challenging the constitutionality of . . . the apportionment of any statewide legislative body,' since such jurisdiction is limited to federal constitutional claims." *Sullivan v. Crowell*, 444 F. Supp. 606, 612 (W.D. Tenn. 1978).

I.      **Factual Background**

On March 21, 2022, six Black voters – named plaintiffs[2] – brought suit in the Circuit Court of Pulaski County, Arkansas ("Pulaski County Circuit Court"), alleging that Arkansas' newly adopted congressional map ("2021 Map") violated their rights under: (1) the Free and Equal Election Clause of the Arkansas Constitution and (2) the Equal Protection Clause of the Arkansas Constitution (Dkt. No. 2, ¶¶ 12, 14–19). Ark. Const. art. III § 2; *id.* art. II § 3. Specifically, plaintiffs sued members of the State Board of Election Commissioners in their official capacities for alleged vote dilution of the African American electorate (*Id.*, ¶¶ 20–21, 24–29).[3] For relief, plaintiffs request that the Pulaski County Circuit Court: (1) declare the 2021 Map unconstitutional under the state constitution; (2) enjoin defendants from any implementation of the 2021 Map; and (3) compel the adoption of a valid congressional map that does not unconstitutionally dilute Black voting power or target Black voters in deprivation of their rights guaranteed by the Arkansas Constitution (*Id.*, ¶ 13).

---

Defendants, in referencing a pending case in this district in which a three-judge panel has been convened, *Simpson v. Hutchinson*, Case No. 4:22-cv-00213-JM-DRS-DPM, acknowledge when addressing plaintiffs' claims in the instant case, "[b]ecause this case raises only state-law claims, rather than a federal constitutional challenge, it is unclear whether the *Simpson* court would have jurisdiction to hear this case were it consolidated with *Simpson*." (Dkt. No. 19, at 14 n.5 (citing *Cavanagh v. Brock*, 577 F. Supp. 176, 180 (E.D. N.C. 1983)). The Court observes that the pertinent discussion of this matter appears at *Cavanagh*, 577 F. Supp. 180 n.3, and the facts that provided the basis for jurisdiction in *Cavanagh* are different from the facts in the instant case. Although defendants request that this Court stay the instant case pending resolution of *Simpson* which defendants allege includes challenges to the congressional map on both federal- and state-law grounds (Dkt. No. 19, at 14), this Court does not understand any party to seek consolidation of the instant case with *Simpson*.

[2]  All plaintiffs reside in Pulaski County, Arkansas (Dkt. No. 2, ¶¶ 14–19).

[3]  Secretary Thurston serves as Chief Elections Officer in the State of Arkansas and is Chairperson and Secretary of the State Board of Election Commissioners, while other named defendants serve as members of the Arkansas State Board of Election Commissioners. Ark. Code Ann.§ 7-4-101(b).

Defendants removed the case from Pulaski County Circuit Court on April 22, 2022, citing 28 U.S.C. §§ 1443(2) and 1441 (hereinafter "§ 1443(2)" and "§ 1441") as their bases for removal (Dkt. No. 1).  Defendants subsequently filed a motion to dismiss for failure to state a claim upon which relief can be granted on April 29, 2022 (Dkt. No. 6).  Plaintiffs then filed the instant motion for remand on May 6, 2022, as well as a motion to stay proceeding pending the resolution of that motion for remand (Dkt Nos. 9; 11).  Thereafter, defendants filed a motion to stay pending *Moore v. Harper* (Dkt. No. 23).[4]  The Court granted plaintiffs' motion to stay proceedings on July 8, 2022 (Dkt. No. 25).

## II. Applicable Legal Standards

### A. Motion For Remand

Federal courts are not courts of general jurisdiction; rather, they possess only the power to hear cases and controversies as authorized by the federal Constitution and a governing statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136–137, (1992); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986); *American Fire & Casualty Co. v. Finn*, 341 U.S. 6 (1951)).  Thus, the ability of a federal court to hear a case on the basis of removal is "completely statutory," an authority derived from Congress' power to "'ordain and establish' inferior courts, conferred on Congress by Article III, § 1 of the Constitution."  *Bauer v. Transitional Sch. Dist. of City of St. Louis*, 255 F.3d 478, 480 (8th Cir. 2001).

A civil action brought in a state court may only be removed if the federal district court could have had original jurisdiction over the claim or claims pleaded by the plaintiff.  28 U.S.C. §

---

[4] Defendants request that this Court stay this case pending the Supreme Court's decision in *Moore v. Harper*, No. 21-1271 (Dkt. No. 23).  That motion is not ripe.  Given that and given this Court's determination with respect to its jurisdiction, the Court declines to rule on the motion.

3

1441.  Likewise, the following civil actions may be removable from state court to district court: (1) an action "[a]gainst any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof," (2) an action "[f]or any act under color of authority derived from any law providing equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."  28 U.S.C. § 1443.

The party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction.  *In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993); *Bor-Son Bldg. Corp. v. Heller,* 572 F.2d 174, 181 n.13 (8th Cir. 1978).  Federal courts are required to "'resolve all doubts about federal jurisdiction in favor of remand' and are strictly to construe legislation permitting removal."  *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) (quoting *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997)).

### 1. Removal Under 28 U.S.C. § 1443(2)

"Section 1443(2) permits removal of suits initiated in state court against a party '[f]or any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.'"  *Bauer*, 255 F.3d at 481.

"In *City of Greenwood v. Peacock*, 384 U.S. 808 (1966), the Supreme Court rejected the argument that, for removal purposes, federal civil rights statutes deputize anyone seeking to exercise a right thereunder."  255 F.3d at 481 (citing *Greenwood*, 384 U.S. at 810–13).  "Rather, upon lengthy analysis of the origins and intent of the statute, the Court held section 1443(2) 'confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil

rights.'" 255 F.3d at 481 (citing *Greenwood*, 384 U.S. at 824). Defendants are state officials, not federal, and do not argue or cite authorities invoking the first clause of § 1443(2). *Greenwood*, 384 U.S. at 815 (holding that the "color of authority" clause "confers a privilege of removal only upon federal officers or agents . . . in affirmatively executing duties under any federal law providing for equal rights"); *Common Cause v. Lewis*, 956 F.3d 246, 253–54 (4th Cir. 2020) (internal quotations omitted) (hereinafter *Common Cause II*) (explaining that "[t]he refusal language was added by amendment in the House with the explanation that it was intended to enable state officers who *refused to enforce* discriminatory state laws in conflict with Section 1 of the Civil Rights Act of 1866 and who were prosecuted in the state courts because of their refusal to enforce state law, to remove their proceedings to the federal court.").[5]

Instead, defendants cite and attempt to rely upon the second clause of § 1443(2), the "refusal clause." State officials may invoke the "refusal clause," the provision of § 1443 allowing for removal of a civil action involving an official "refusing to do any act on the ground that it would be inconsistent with . . . [a] law [providing for equal rights]." *Common Cause II*, 956 F.3d at 255; *see also White v. Wellington*, 627 F.2d 582, 587 (2d Cir. 1980). For a state official to invoke § 1443(2)'s "refusal clause" there must be no doubt that they "have the authority to enforce discriminatory state laws." *Common Cause II*, 956 F.3d at 255.

---

[5] The Court acknowledges that defendants appear to endorse a legal theory that purports to prevent state courts from questioning a state legislature's federal apportionment decisions (Dkt. No. 19, at 1, 5–12). The Court understands defendants' arguments in this regard to be directed at permitting removal under § 1441. For the reasons explained in this Order, the Court rejects those arguments. Neither of the parties have briefed the extent to which defendants might be able to rely on these same arguments to invoke the first clause of § 1443(2). For the same reasons, the Court rejects those arguments with respect to removal under § 1441, the Court rejects those arguments as a basis for removal under the first clause of § 1443(2).

### 2.      Removal Under 28 U.S.C. § 1441

Section 1441 allows a defendant to remove an action filed in state court to a federal district court if the federal district court has original jurisdiction over the civil action. 28 U.S.C. § 1441(a). The two well-established sources of original jurisdiction are federal question jurisdiction and traditional diversity jurisdiction. 28 U.S.C. §§ 1331, 1332; *Hurt v. Dow Chemical Co.*, 963 F.2d 1142, 1144 (8th Cir. 1992). Federal courts have federal question jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Federal courts have diversity jurisdiction over civil actions between citizens of different states where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a)–(b).

"Removal based on 'federal-question jurisdiction is governed by the 'well-pleaded-complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009) (citing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987)). "Because this well-pleaded complaint rule 'makes the plaintiff the master of the claim[, the plaintiff] may avoid federal jurisdiction by exclusive reliance on state law.'" 561 F.3d at 912. "Defendants are 'not permitted to inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law.'" 561 F.3d at 912 (citing *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000)). "It is firmly established that a federal defense, including a preemption defense, does not provide a basis for removal, 'even if the defense is anticipated in the plaintiffs' complaint, and even if both parties concede that the federal defense is the only question truly at issue in the case.'" 561 F.3d at 912 (citing *Caterpillar,* 482 U.S. at 393).

### B. Motion For Attorney's Fees Under 28 U.S.C. § 1447(c)

Securing attorney's fees for a motion for remand is governed by 28 U.S.C. § 1447(c) ("§ 1447(c)"). Section 1447(c) states in pertinent part: "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.* According to the Supreme Court, "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Convent Corp. v. City of N. Little Rock, Ark.*, 784 F.3d 479, 483 (8th Cir. 2015) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). Moreover, a district court "retain[s] discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." *Martin*, 546 U.S. at 141. "A district court may take into consideration 'a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction' in deciding whether to award attorney's fees." *Convent Corp.*, 784 F.3d at 483 (8th Cir. 2015) (quoting *Martin*, 546 U.S. at 141).

### III. Discussion

The Court addresses the merits of plaintiffs' motion for remand and determines that the defendants' two bases for removal – §§ 1443 and 1441 – are inapplicable in the present case (Dkt. No. 9). Given the Court's determination that defendants improperly removed this case, the Court sees no reason to address plaintiffs' arguments regarding the *Pennhurst* Doctrine (Dkt. No. 10, at 14–15). *See generally Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90 (1984) (holding that a federal court may not "instruct[] state officials on how to conform their conduct to state law . . . ." because a federal court exercising such authority would conflict "directly with the

principles of federalism that underlie the Eleventh Amendment."). Lastly, for the reasons stated below, the Court declines to grant plaintiffs' request for attorney's fees pursuant to § 1447(c), subject to plaintiffs refiling and briefing such a request.

### A.   Motion For Remand

Plaintiffs contend in their complaint filed in state court that the 2021 Map violates the Arkansas Constitution by impermissibly diluting the voting power of Black voters (Dkt. No. 2, ¶¶ 85–102). As a remedy, plaintiffs seek a court to: (1) "declar[e] the 2021 Map unconstitutional [under the state constitution];" (2) "enjoin[] defendants from any implementation of the 2021 Map;" and (3) "compel[] the adoption of a valid congressional map that does not unconstitutionally dilute Black voting power or target Black voters in deprivation of their rights guaranteed by the Arkansas Constitution" (*Id.*, ¶ 13).[6]

Plaintiffs argue that defendants improperly removed this action under §§ 1443 and 1441, stating that § 1443's "refusal clause" is inapplicable here and that, on the face of their complaint, plaintiffs' claims do not arise under federal law (Dkt. No. 10, at 2–3). Defendants maintain that they properly removed this action pursuant to §§ 1443 and 1441 (Dkt. Nos. 1, ¶¶ 2–6; 19, at 1). The Court addresses defendants' two bases for removal in this Order, and the Court concludes that

---

[6] In Arkansas, congressional lines are drawn by the legislature, as normal legislation. State legislative lines are drawn by a three-member commission, consisting of the Arkansas Governor, Arkansas Secretary of State, and Arkansas Attorney General. In the 2020 cycle, the legislature passed a congressional plan (HB 1982 and SB 743) on October 7, 2021 (*See* Dkt. No. 2, ¶ 5). Arkansas Governor Asa Hutchinson declined to sign the bills with the 2021 Map (*See* Dkt. No. 2, ¶¶ 8–10, 78). The Arkansas Attorney General delivered Opinion No. 2021-092 declaring the 2021 Map would go into effect on January 14, 2022 (*See* Dkt. No. 2, ¶ 78, at 20 n.14). The Arkansas Board of Apportionment unanimously approved the state legislative plans on November 29, 2021.

defendants have not met their burden, resolves all doubts in favor of remand, and determines that defendants improperly removed this case.

### 1.     Removal Under 28 U.S.C. § 1443(2)

Defendants invoke § 1443(2) in their notice of removal, arguing that plaintiffs seek a "state court to order the General Assembly to adopt new congressional maps using a race-based litmus test" (Dkt. No. 1, ¶ 3). Defendants contend that "[s]uch a requirement would run afoul of the [federal] Voting Rights Act and the Equal Protection Clause" (*Id.*). Defendants cite *Alonzo v. City of Corpus Christi*, 68 F.3d 944, 946 (5th Cir. 1995), for the proposition that plaintiffs' complaint and proposed remedy "presents a colorable conflict between state and federal law sufficient to justify removal under § 1443(2)" (*Id.*, ¶ 4). Defendants, in an effort to bolster this argument for removal, characterize the remedy plaintiffs seek as allegedly forcing defendants, against their will, to violate the federal Voting Rights Act or the federal Constitution's Equal Protection Clause (*Id.*, ¶ 5). *See generally* U.S. Const. amend. XIV § 1; 52 U.S.C. § 10301 *et seq.* Plaintiffs disagree with this characterization and assert that the "refusal clause" is inapplicable here because "[p]laintiffs do not allege that Defendants are 'refusing to do' anything. Plaintiffs challenge the enactment and enforcement of a state law, not any 'refusal,'" according to plaintiffs (Dkt. No. 10, at 5).

As explained, § 1443(2)'s "refusal clause" "authorizes removal of civil actions . . . [where a state official is sued] for refusing to do any act on the ground that it would be inconsistent with . . . [a] law [providing for equal rights]." *Common Cause II*, 956 F.3d at 255; *see also White*, 627 F.2d at 587. The inquiry in the Eighth Circuit for determining whether a defendant can rely for removal on § 1443(2)'s refusal clause requires determining whether the plaintiff alleges that the defendant has: (1) refused to do an act on the ground that such an act would (2) create a colorable

conflict between state and federal law guaranteeing equal rights. *Thornton v. Holloway*, 70 F.3d 522, 523 (8th Cir. 1995) (declining to allow § 1443(2) removal on the ground that the plaintiffs did not demonstrate "any act that [the defendants] refused to do" and not reaching the colorable conflict inquiry because there was no showing of refusal to act). Other courts have adopted and implemented a similar inquiry. *City & Cnty. of San Francisco v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, Case No. C 02-03462 WHA, 2002 WL 1677711, at *4 (N.D. Cal. July 24, 2002) (citing *Alonzo*, 68 F.3d at 946, for the proposition that "[e]ven if there had somehow been a 'refusal to act,' defendants would still have to show a 'colorable conflict between state and federal law leading to [his or her] refusal to follow plaintiff's interpretation of state law because of a good faith belief that to do so would violate federal law.'")

Critical to the first inquiry is the distinction between a defendant's action versus inaction. *Thornton*, 70 F.3d at 523; *San Francisco*, 2002 WL 1677711, at *4 (explaining that determining whether the "refusal clause" can be invoked turns on whether the plaintiff challenges the "action" or "inaction" of the defendant); *see also Detroit Police Lieutenants & Sergeants Ass'n v. City of Detroit*, 597 F.2d 566, 568 (6th Cir. 1979) (referencing congressional debates around the passage of the provisions now found at § 1443 and stating that "[w]e believe that . . . [§ 1443(2)] . . . was designed to protect state officers from being penalized for failing to enforce discriminatory state laws or policies by providing a federal forum in which to litigate these issues."). The express language of § 1443(2) allows for the remand of a suit only when the suit challenges a failure to act or enforce state law. *San Francisco*, 2002 WL 1677711, at *4; *see also Common Cause II*, 956 F.3d at 252 (stating that "[t]he Refusal Clause was intended to apply to state officers who refused to enforce state laws."); *Massachusetts Council of Const. Emp., Inc. v. White*, 495 F. Supp. 220, 222 (D. Mass. 1980) (explaining that the "refusal clause" "is unavailable . . . where the defendants'

10

actions, rather than their inaction, are being challenged."). Furthermore, once a refusal to act is established, defendants must show a colorable conflict between state and federal law guaranteeing equal rights. *See Common Cause v. Lewis*, 358 F. Supp. 3d 505, 510–11 (E.D. N.C. 2019) (hereinafter *Common Cause I*), *aff'd*, 956 F.3d 246 (4th Cir. 2020); *Stephenson v. Bartlett*, 180 F. Supp. 2d 779, 785 (E.D. N.C. 2001).

In the instant case, defendants' arguments do not satisfy either prong of the § 1443(2) inquiry.

### a. "Refusal Clause"

Defendants argue that they meet § 1443(2)'s "refusal clause" criteria because plaintiffs challenge defendants' refusal to enforce a congressional map based on what defendants call a "race-based litmus test" (Dkt. Nos. 1, ¶ 3; 19, at 5–7). Defendants read plaintiffs' complaint to argue that "the Arkansas Constitution requires the adoption of a map drawn on racial lines to group as much of the state's black population into a single district as possible." (Dkt. No. 19, at 6). Defendants state that "[p]laintiffs' complaint makes clear that the only sort of congressional map they believe would be valid under state law is one that combines Pulaski and Jefferson counties together in a district that includes the eastern and southeastern portions of the state, where the state's most predominantly Black counties are located." (*Id.*) (internal quotation omitted). Defendants claim that they refuse to enforce such a map because such action would put them on a collision course with federal law (*Id.*, at 5–7). The Court rejects defendants' attempts to characterize plaintiffs' complaint as something it is not.

Plaintiffs in the instant action challenge an affirmative act, the enforcement of a state law creating congressional districts that plaintiffs see as violative of the state constitution (Dkt. No. 10, at 6–7). Plaintiffs point the Court to *Common Cause I* to help guide the Court's analysis. 358 F.

Supp. 3d at 505, 510.  In *Common Cause I*, a federal court concluded that an attempt to remove a case over partisan jerrymandering through § 1443(2)'s "refusal clause" was not proper because the *Common Cause I* plaintiffs' state court action was not brought against the defendants "for refusing to do" anything.  358 F. Supp. 3d at 510–11.  Defendants attempt to distinguish *Common Cause I* from the instant action by arguing that the *Common Cause I* plaintiffs sued state legislators who were not charged with implementing the map at issue (Dkt. No. 19, at 8–9).  This Court agrees that the Fourth Circuit Court of Appeals affirmed remand on this basis.  956 F.3d at 255–56.  However, this Court has studied the applicability of the remainder of the district court's analysis in *Common Cause I* with respect to the operative facts here.

Plaintiffs in this action did not sue defendants for their refusal to act.  *Cf. Greenberg v. Veteran*, 889 F.2d 418, 419 (2d Cir. 1989) (determining removal proper when state court action involved review of a town supervisor's denial of a petition to incorporate a village where town supervisor's refusal to act was based, in part, on grounds that "the boundaries of the proposed village, where ascertainable, evinced an intent to exclude black residents and thus violated the state and federal constitutions"); *White v. Wellington*, 627 F.2d 582 (2d Cir. 1980) (determining removal proper where New Haven police officers sued Connecticut state officials for denying them promotion in violation of state law and where state officials were in the process of revising the civil service examination in response to a finding by the United States Equal Employment Opportunity Commission that New Haven city promotional practices were racially discriminatory).  Plaintiffs sued to prevent defendants from enforcing an Arkansas state law, a law which plaintiffs claim violates the Arkansas Constitution (Dkt. No. 2, ¶¶ 12–13).

As explained, determining whether the "refusal clause" is properly invoked turns on whether a plaintiff challenges the action or inaction of a defendant.  *Thornton*, 70 F.3d at 523; *see*

*also San Francisco*, 2002 WL 1677711, at *4. Defendants bear the burden at this stage, and doubts must be resolved in favor of remand. Congress implemented § 1443(2) to "protect state officers from being penalized for failing to enforce discriminatory state laws or policies by providing a federal forum in which to litigate these issues." *Detroit Police Lieutenants and Sergeants Ass'n*, 597 F.2d at 568. Here, defendants are not sued by plaintiffs for failing to enforce a state law, and this Court concludes that defendants cannot therefore make use of § 1443(2)'s "refusal clause."

### b. Colorable Conflict With Federal Law

Even if defendants could satisfy the "refusal clause" prong, defendants do not satisfy the colorable conflict prong of the § 1443(2) analysis, thereby precluding defendants from relying on § 1443(2) to remove plaintiffs' complaint from state court.

The colorable conflict prong requires defendants to refuse to do an act on the ground that such an act would create a colorable conflict between state and federal law guaranteeing equal rights. Defendants characterize plaintiffs' complaint as arguing for the adoption of a race-based litmus test for creating congressional districts, one that would demand combining Pulaski and Jefferson counties into the same district (Dkt. No. 19, at 5–7). Such requested relief, according to defendants' theory, creates a colorable conflict with federal law. Defendants misconstrue plaintiffs' complaint and controlling law in a strained effort to fit within the language of § 1443(2).

As a remedy, in their complaint, plaintiffs seek a court to: (1) declare the 2021 Map unconstitutional under the state constitution; (2) enjoin defendants from any implementation of the 2021 Map; and (3) compel the adoption of a valid congressional map that does not unconstitutionally dilute Black voting power or target Black voters in deprivation of their rights guaranteed by the Arkansas Constitution (Dkt. No. 2, ¶ 13).

The Court observes that the named defendants are not charged with authority under Arkansas law to draw congressional lines; congressional lines are drawn by the legislature, as normal legislation (*See* Dkt. No. 2, ¶ 5).

Moreover, plaintiffs' complaint does not "make[] clear that the only sort of congressional map they believe would be 'valid' under state law is one that combines Pulaski and Jefferson counties," contrary to defendants' allegations (Dkt. No. 19, at 6). Rather, plaintiffs in their complaint argue that "Arkansas'[] congressional map has long been drawn to thwart the ability of Black voters to elect their candidates of choice" (Dkt. No. 2, ¶ 3). Plaintiffs' complaint then provides the example of that alleged thwarting by pointing to the fact that Jefferson and Pulaski Counties, though contiguous and populated with a large number of Black voters, "have never been in the same congressional district" (*Id.*). Plaintiffs in their complaint explain their position that the congressional district map enacted in 2011 diluted the power of Black voters by splitting Jefferson County (*Id.*, ¶ 4). Plaintiffs' complaint subsequently alleges that the 2021 Map further diluted the power of Black voters by "systematically slic[ing] and dic[ing] Black communities in Arkansas, in particular in Pulaski County" (*Id.*, ¶ 5). Plaintiffs in their complaint then request a set of remedies, one of which includes an Order declaring the 2021 Map unconstitutional under the state constitution because plaintiffs claim it violates the Arkansas Constitution's Free and Equal Election Clause and the Arkansas Constitution's Equal Protection Clause (*Id.*, ¶ 13). Ark. Const. art. III § 2; *id.* art. II § 3. This request, the other requested remedies, and plaintiffs' complaint, as written, do not put defendants on a collision course with federal law. Defendants have the burden at this stage, and any doubts must be resolved in favor of remand.

To make a claim of colorable conflict, defendants must show that a state ruling would create a conflict between state and federal law. *See Common Cause I*, 358 F. Supp. 3d at 510–11,

*aff'd*, 956 F.3d 246 (4th Cir. 2020); *Stephenson*, 180 F. Supp. 2d at 785; *see also Alonzo*, 68 F.3d at 946 (determining a colorable conflict existed when plaintiffs' sought remedy would force defendant's noncompliance with a federal consent decree); *Greenberg*, 889 F.2d at 421 (finding a colorable conflict when a town supervisor denied a petition to incorporate a village under village law on the basis that such incorporation would produce racial discrimination under federal law); *White*, 627 F.2d at 585 (finding colorable conflict existed when the United States Equal Employment Opportunity Commission found that the challenged state law resulted in Title VII violations and that, if defendants violated state law, they were required to do so by Title VII); *Cavanagh*, 577 F. Supp. at 178 (finding a colorable conflict when plaintiffs sought compliance with amendments to the North Carolina Constitution after the U.S. Attorney General had already found that enforcement of the state constitutional provision at issue would force state officials to violate federal law). Defendants have made no such showing here.

In *Sexson*,[7] the Seventh Circuit Court of Appeals observed, "[t]he Voting Rights Act established broad boundaries which no state apportionment law could contravene. Within those boundaries, variations of apportionment plans [can] be formulated, none of which would violate federal law." *Sexson*, 33 F.3d at 804. However, "it does not follow that just because an apportionment plan conforms with federal law, an attack on that plan necessarily seeks to transgress federal law." *Id.* "[T]he plaintiffs could [seek] an alternative apportionment plan which

---

[7] In *Sexon*, as their basis for removal under § 1443, defendants claim that "any redistricting plan which complied with [state law] would necessarily violate [federal law]." 33 F.3d at 804. This Court acknowledges, as the Seventh Circuit Court of Appeals did, that the *Sexon* court was asked only to review the propriety of the district court's remand order, explaining: "[w]e have not been asked to review the district court's decision to allow removal in the first place. Therefore, we make no statement whether the affirmative defense presented a sufficient 'colorable claim' to warrant removal, and do not comment on the court's subsequent exercise of jurisdiction." *Id.* at 804 n.3. The Seventh Circuit upheld the remand order. *Id.* at 804.

15

also fully complie[s] with federal law but varie[s] from the defendants' plan only in its interpretation of state law." *Id*. Such is the situation of the instant case, based on allegations in plaintiffs' complaint.

Defendants essentially argue that the consideration of race – *any* consideration of race – conflicts with the federal Constitution's Equal Protection Clause (Dkt. No. 19, at 6–7). *See generally* U.S. Const. amend. XIV § 1. This is not the law generally, *see, e.g., Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 312 (2013), nor is it controlling law in the redistricting context specifically, *see, e.g., Wisconsin Legislature v. Wisconsin Elections Comm'n,* 142 S. Ct. 1245, 1248 (2022).

Plaintiffs' contention that the 2021 Map violates Arkansas state law does not imply that their sought remedy will violate federal law (Dkt. Nos. 1, ¶¶ 3–5; 2, ¶¶ 12–13). A fair reading of plaintiffs' complaint demonstrates that plaintiffs "seek a map that fully complies with both state and federal law," and such a request does not create a colorable conflict with federal law sufficient to warrant § 1443(2) removal (Dkt. No. 2; 10, at 13 ("Plaintiffs seek a map that fully complies with both state and federal law. Defendants do not assert that such a map is impossible, nor can they")).

### c. § 1443(2) Conclusion

After examining plaintiffs' complaint, defendants' notice of removal, plaintiffs' motion for remand, all other relevant filings on this issue of remand, and weighing applicable law, for these reasons separately and in combination, the Court concludes that defendants have not met their burden, resolves all doubts in favor of remand, and determines that defendants improperly removed this case under § 1443(2).

### 2. Removal Under 28 U.S.C. § 1441

Defendants invoke § 1441 as their second basis for removal, arguing that "[p]laintiffs' claims under the Arkansas Constitution are also part of a civil action[] arising under the Constitution, laws, or treaties of the United States." (Dkt. No. 1, ¶ 6). Specifically, defendants argue that this action is a challenge to the Arkansas General Assembly's exercise of its enumerated powers under the federal Constitution's Election Clause, implicating federal law in such a way to confer federal question jurisdiction under 28 U.S.C. § 1331 ("§ 1331") (*Id.*). In support of their position, defendants cite several dissenting and concurring opinions from the federal Supreme Court in an attempt to sway this Court's determination (Dkt. Nos. 1, ¶ 6; 19, at 11–12).[8]

Defendants' references to non-controlling authority do not change the fact that this Court is obligated to follow settled, controlling law and that it is settled, controlling law that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiffs' properly pleaded complaint." *Cent. Iowa Power Co-op.*, 561 F.3d at 912 (citing *Caterpillar Inc.*, 482 U.S. at 392). Arguably, plaintiffs could have brought their claim under a host of federal provisions. However, as masters of their complaint, plaintiffs chose not to do so. *Caterpillar Inc.*, 482 U.S. at 395. Defendants cannot transform a state-law claim into a federal claim conferring § 1331 jurisdiction by raising a federal defense. *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152–53 (1908).

Here, plaintiffs challenge the 2021 Map on the basis that its adoption and enforcement violated their rights under: (1) the Free and Equal Election Clause of the Arkansas Constitution

---

[8] The dissents and concurrences cited by defendants include the following: *Moore v. Harper*, 142 S. Ct. 1089, 1089 (2022) (Alito, J., dissenting and Kavanaugh, J., concurring); *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 29 (2020) (Gorsuch, J., concurring); *Bush v. Gore*, 531 U.S. 98, 112 (2000) (Rehnquist, C.J., concurring).

and (2) the Equal Protection Clause of the Arkansas Constitution (Dkt. No. 2, ¶¶ 12, 14–19). Ark. Const. art. III § 2; *id.* art. II § 3. Nothing on the face of the complaint indicates that plaintiffs' cause of action arises under federal law within the meaning of § 1331. *Mottley*, 211 U.S. at 152–53. The Supreme Court has made clear that defendants "cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law." *Caterpillar, Inc.,* 482 U.S. at 399; *see also Stephenson*, 180 F. Supp. 2d at 786. Furthermore, "[t]ime and again [the Supreme Court has] emphasized that 'reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court.'" *Voinovich v. Quilter*, 507 U.S. 146, 156 (1993) (internal quotations and citations omitted). "[F]ederal courts are bound to respect the States' apportionment choices unless those choices contravene federal requirements." *Id.* The issue in this case as pled by plaintiffs is whether the 2021 Map contravenes state law, not federal law.[9]

After examining plaintiffs' complaint, defendants' notice of removal, plaintiffs' motion for remand, all other relevant filings on this issue of remand, and weighing applicable law, the Court concludes that defendants have not met their burden, resolves all doubts in favor of remand, and determines that defendants improperly removed this case under § 1441.

### B. Motion For Attorney's Fees

Plaintiffs request in their motion for remand that the Court award them attorney's fees pursuant to § 1447(c). Section 1447(c) provides, in pertinent part: "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447. As discussed above, the Supreme Court instructs lower

---

[9] The Court also notes that defendants seem to admit in footnote five of their response to plaintiffs' motion for remand that "this case raises only state-law claims, rather than a federal constitutional challenge" (Dkt. No. 19, at 14 n.5).

courts that "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141. "There is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases." *Id.* at 140. Defendants argue that § 1447(c) sets "an exceptionally high bar" for awarding attorney's fees, "an exceptionally high bar" defendants claim has not been met here.

The Court, at this time, declines to grant plaintiffs' request for attorney's fees given the limited briefing on the topic. Should plaintiffs seek to recover attorney's fees pursuant to § 1447(c), the Court will retain jurisdiction over the question of fees pursuant to § 1447. Persuasive authorities hold that district courts retain jurisdiction to consider collateral matters after remand and that attorney's fees may be awarded under a separate order. *Bryant v. Britt*, 420 F.3d 161, 165–66 (2d Cir. 2005) (collecting cases); *Wisconsin v. Hotline Indus.*, 236 F.3d 363, 365 (7th Cir. 2000); *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 445 (9th Cir. 1992), *overruled on other grounds by Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005); *Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F.3d 252, 257 (6th Cir. 1997); *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1258 (3d Cir. 1996); *see also Walker v. Lion Oil Trading & Transp., LLC*, Case No. 13-cv-01080, 2014 WL 5363862 (W.D. Ark. Oct. 21, 2014) (examining authorities and granting a motion for attorney's fees after remand). Plaintiffs shall have 14 days from the entry of this Order to move for reconsideration of the Court's determination on the issue of attorney's fees, should they choose to do so.

## IV. Conclusion

For the foregoing reasons, the Court grants plaintiffs' request to remand this case to the Circuit Court of Pulaski County immediately on the basis that this Court lacks subject matter jurisdiction (Dkt. No. 9, at 1). The Court denies without prejudice plaintiffs' request for attorney's fees pursuant to § 1447(c) and retains jurisdiction over the question of attorney's fees pursuant to § 1447(c) (*Id.*, at 2). Plaintiffs shall have 14 days from the entry of this Order to move for reconsideration of the Court's determination on the issue of attorney's fees, should they choose to do so.

It is so ordered this 13th day of July, 2022

*Kristine G. Baker*
Kristine G. Baker
United States District Judge